IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| In re BI-LO, LLC, *et al.*, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| BI-LO, LLC, et al., and ) | |
| Lone Star Fund V (U.S.) L.P., ) | |
| Appellants, ) | |
| ) | C.A. No. 7:11-cv-00177-JMC |
| v. ) | |
| ) | **OPINION AND ORDER** |
| United Food and Commercial Workers ) | |
| Unions and Employers Pension Fund, ) | |
| Appellee. ) | |
| _____) | |

This matter comes before the court on the appeal of Appellants[1] from the United States Bankruptcy Court for the District of South Carolina's (the "Bankruptcy Court") Order Denying Bar Date Challenge (the "Order") [Doc. 5-5], in which the Bankruptcy Court denied Appellants' challenge to the proof of claim (the "Pension Fund Claim") [Doc. 14-1] filed by the United Food and Commercial Workers Unions and Employers Pension Fund (the "Pension Fund") in the chapter 11 case of BI-LO, asserting "withdrawal liability" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*.[2]  This court has subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  After reviewing the record on appeal, the parties' briefs

---

[1]     The appellants include BI-LO, LLC ("BI-LO"), BG Cards, LLC, ARP Ballentine LLC, ARP James Island LLC, ARP Moonville LLC, ARP Chickamauga LLC, ARP Morganton LLC, ARP Hartsville LLC, ARP Winston Salem LLC , and Lone Star Fund V (U.S.), L.P. ("Lone Star Fund V") (collectively referred to as "Appellants").

[2]     As a result of the denial of the Bar Date Challenge (defined below), the Pension Fund Claim is continuing to be litigated on the merits before the United States District Court for the Northern District of Georgia pursuant to the *Stipulation and Consent Order Resolving Motion for Arbitration* [Bankr. Dkt. No. 3537] (the "Consent Order") among the Appellants, the Pension Fund, and LSF5 Grocery Holdings, LLC (the "Investor"), entered by the Bankruptcy Court on August 23, 2010.

and oral arguments, and the applicable law, this court affirms the Order of the Bankruptcy Court.

## FACTUAL AND PROCEDURAL BACKGROUND

BI-LO operates a regional supermarket chain that filed for relief under chapter 11 of the Bankruptcy Code on March 23, 2009, thereby commencing the BI-LO bankruptcy cases (the "BI-LO Cases") in the District of South Carolina (Case No. 09-02140-HB).  The Bankruptcy Court established August 13, 2009, as the deadline (the "Bar Date") for filing proofs of claim against the debtors by creditors (other than governmental units) in the BI-LO Cases. On April 30, 2010, the BI-LO Bankruptcy Court entered an order confirming BI-LO's plan of reorganization and BI-LO's plan became effective on May 12, 2010.  As a consequence of its corporate restructuring, BI-LO emerged as an ongoing operating entity.

BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC ("Bruno's"), formerly a regional retail supermarket chain, filed for relief under chapter 11 of the Bankruptcy Code on February 5, 2009, in the Northern District of Alabama (Case No. 09-00634-BGC) (the "Bruno's Bankruptcy Court"). Bruno's Fourth Amended Plan of Liquidation was confirmed by order of the Bruno's Bankruptcy Court on September 25, 2009.  The Bruno's plan became effective on October 6, 2009.  Bruno's no longer operates, and substantially all of its assets – grocery stores and inventory – have been sold.[3]  Bruno's was formerly a subsidiary of BI-LO and was spun off from BI-LO in March 2007 (the "Spin-Off").

Prior to filing its bankruptcy case, Bruno's was a major contributing employer to the Pension

---

[3]     As part of this liquidation process, Bruno's changed its official legal name to BFW Liquidation, LLC.

Fund. In connection with its bankruptcy, Bruno's permanently ceased to have any covered operations under the Pension Fund. As a result, the Pension Fund alleges that Bruno's incurred a complete withdrawal from the Pension Fund, within the meaning of Section 4201(a) of ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). On or about August 11, 2009, the Pension Fund filed separate, identical proofs of claims against each of the debtors in the BI-LO Cases, each in the amount of $63,806,631.00. As a result of the later substantive consolidation of the debtors and their estates, the Bankruptcy Court expunged as duplicate claims all of the claims filed by the Pension Fund with the exception of the Pension Fund Claim filed against BI-LO.

The Pension Fund Claim was filed on Official Form 10 and included an appendix outlining the basis of the claim (the "Appendix"). The Appendix to the Pension Fund Claim states in pertinent part as follows:

> Prior to filing the Bruno's Bankruptcy Case, Bruno's was a major contributing employer to the United Food and Commercial Workers Unions and Employers Pension Fund (the "Pension Fund"), a multi-employer pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. In connection with the Bruno's Bankruptcy Case, Bruno's permanently ceased to have any covered operations under the Pension Fund on or before June 30, 2009. As a result, Bruno's has incurred a complete withdrawal from the Pension Fund, within the meaning of Section 4201(a) of ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980.
>
> Upon information and belief, each of the Debtors, including, without limitation, BI-LO, LLC, is a member of Bruno's "controlled group" of organizations as that term is defined in Section 4001(b) of ERISA and the regulations promulgated thereunder. Therefore, Bruno's and each of the Debtors, including, without limitation, BI-LO, LLC, is jointly and severally liable for any withdrawal liability incurred by Bruno's. Based on the formula set forth in Section 4211(b) of ERISA, the Pension Fund has computed Bruno's withdrawal liability to the Pension Fund to be $63,806,631.00.

> Through this proof of claim (the "Proof of Claim"), the Pension Fund asserts a claim against BI-LO, LLC, in the full amount of its liability under ERISA and the pension plan documents, including, without limitation, principal, accrued interest, and all other expenses, fees (including attorneys' fees), costs, and charges which the Pension Fund is entitled to recover from BI-LO, LLC, under ERISA, the pension plan documents and applicable law (the "Pension Fund Claim").

Pension Fund Claim, Appendix, p. 1) (emphasis added).

On August 31, 2009, BI-LO filed an objection to the Proof of Claim explaining that BI-LO was not a member of Bruno's "controlled group" at the time of Bruno's withdrawal and that, therefore, BI-LO was not liable for any of Bruno's alleged withdrawal liability. Multiple other parties in interest in the BI-LO Cases, including Lone Star Fund V,[4] formally joined in BI-LO's objection to the Proof of Claim for the same reasons urged in BI-LO's objection. On September 30, 2009, the Pension Fund filed a response stating that BI-LO remained liable for Bruno's withdrawal liability as a member of the controlled group notwithstanding the Spin-Off, which was being disregarded by the Pension Fund because a principal purpose was to "evade or avoid" withdrawal liability.

Subsequent to the filing of the Pension Fund Claim and the Pension Fund's initial response to BI-LO's objection, BI-LO filed several disclosure statements recognizing the existence of the Pension Fund Claim, the amount of liability asserted against the bankruptcy estates, and the nature of that liability as one for withdrawal liability under ERISA. On September 30, 2009, the Pension Fund filed its Motion of the United Food and Commercial Workers Unions and Employers Pension

---

[4] Appellant Lone Star Fund V is the parent company of the investor under BI-LO's plan of reorganization. The investor is responsible for paying any claims of the Pension Fund against BI-LO that may be ultimately allowed. Lone Star Fund V is also a guarantor with respect to any such payments that may ultimately be owed by the investor to the Pension Fund.

Fund to Compel Arbitration or, Alternatively, for Relief from Automatic Stay to Pursue Arbitration of Claim (the "Motion to Arbitrate") requesting that the Bankruptcy Court compel arbitration of any objections to the Pension Fund Claim. The Motion to Arbitrate was opposed by BI-LO. On June 25, 2010, nearly a year after the BI-LO's initial objection to the Pension Fund Claim, almost two months after confirmation of the Debtors' Plan, and four days before the hearing in the Bankruptcy Court on the Motion to Arbitrate, BI-LO raised for the first time the Bar Date challenge at issue in this appeal.

Prior to the Bankruptcy Court's ruling on the Motion to Arbitrate, BI-LO and the Pension Fund agreed to the entry of a consent order which transferred the objections to the Pension Fund Claim to the United States District Court for the Northern District of Georgia, to be consolidated for pre-trial purposes with the claims pending in the matter captioned *Lone Star Fund V (US) L.P. v. United Food and Commercial Workers Unions and Employers Pension Fund*, Case No. 09-2886. Notwithstanding the consent order, the parties agreed that the Bankruptcy Court should determine the Bar Date challenge.

In its Bar Date challenge, BI-LO alleged that the Pension Fund Claim was barred in regard to any assertion of withdrawal liability based on the theory that BI-LO sought to evade or avoid the liability through the Spin-Off transaction. The Bankruptcy Court held that the Pension Fund Claim was sufficient under bankruptcy law to give notice of a claim against BI-LO for withdrawal liability under ERISA, including, without limitation, any issues as to whether BI-LO was liable for withdrawal liability because it had spun off its subsidiary, Bruno's. The Bankruptcy Court's reasoning was based upon the limited requirements of proof of claim notices in bankruptcy (as opposed to either civil action pleading or proof at trial), the nature of a withdrawal liability claim

5

under ERISA as viewed in that context, and the text of the Pension Fund Claim. Taken as a whole, the Bankruptcy Court found the notice provided by the Pension Fund Claim to be more than adequate for bankruptcy purposes to encompass arguments as to the impact of BI-LO's spin-off of Bruno's on BI-LO's withdrawal liability under ERISA. The Bankruptcy Court further found that the equities and events of the bankruptcy case supported its reading of the Pension Fund Claim and that its ruling was consistent with both the Congressional intent relating to ERISA and applicable Fourth Circuit law favoring a resolution of claims on the merits. (Order, ¶¶ W-Z).

Appellants filed the instant appeal to the Bankruptcy Court's Order.

## STANDARD OF REVIEW

Appellants do not dispute any of the findings of fact contained in the Order of the Bankruptcy Court. At the oral argument before this court on September 12, 2011 (the "Oral Argument"), Appellants reiterated that no factual dispute exists, and raised only a dispute as to the Bankruptcy Court's application of law to the undisputed facts.[5] Appellants correctly submit that this court's review of questions of law on appeal is on a *de novo* basis. *See Loudoun Leasing Dev. Co. v. Ford Motor Credit Cor. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 206 (4th Cir. 1997). In its brief, the Pension Fund also notes that matters of "equity" are reviewed applying an "abuse of discretion" standard. *Uwimana v. Gov't of Rwanda (In re Uwimana)*, 284 B.R. 218, 222 (D. Md. 2002) (citations omitted). The difference in these two standards is not significant for purposes of this ruling given this court's conclusions of law.

---

5       Transcript of Oral Arguments ("Transcript"), p 5.

**DISCUSSION**

Appellants argue on appeal that the Bankruptcy Court erred in determining that the Pension Fund Claim asserting withdrawal liability under ERISA against BI-LO, and specifically noting that such liability arose from BI-LO's status as a member of Bruno's controlled group, sufficiently encompassed claims arising from allegations that BI-LO engaged in a transaction for the principle purpose of evading or avoiding such liability. Specifically, Appellants contend that a claim for withdrawal liability on the basis of controlled group principles is separate and distinct from a claim for withdrawal liability based on an evade or avoid theory, and that the Pension Fund Claim only asserted liability based on controlled group principles. Therefore, Appellants assert that the Pension Fund failed to submit its claim for withdrawal liability based on an evade or avoid theory prior to the expiration of the Bar Date. The court disagrees.

**I.  Withdrawal Liability**

BI-LO urges the court to adopt its position that evade or avoid issues should be considered separate and distinct from controlled group issues for purposes of a proof of claim based on two propositions: (1) that ERISA, which like virtually all statutes is divided into multiple sections and subsections, places the evade or avoid issue in a different section than the sections defining withdrawal liability, controlled group membership or the calculation of damages; and (2) that evade or avoid issues involve additional proof in the litigation arena. These "section" and "proof" arguments are not compelling, however, when viewed in the context of the remedial nature of ERISA, the interrelationship of withdrawal liability, controlled group membership and evade or avoid issues under the statute, and the limits of the Bankruptcy notice requirements under Section

7

501 of the Bankruptcy Code and Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

ERISA, as amended by the MPPAA, imposes a mandatory withdrawal liability on employers who cease contributing to a pension plan or who cease covered operations. *See generally* 29 U.S.C. § 1381, *et seq.*; *Centra, Inc. v. Cent. States*, 578 F.3d 592, 594 (5th Cir. 2009). All trades or businesses under common control, which are referred to as the controlled group, are treated as a single employer under ERISA, and are jointly and severally liable for the withdrawal liability. *See, e.g., Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 121-22 (4th Cir. 1991).

In enacting the MPPAA, Congress recognized that employers owing significant pension liability may attempt to avoid their obligations through evasive transactions. *See, e.g., Supervalu, Inc. v. Bd. of Trs. of the Southwestern Pa. & W. Md. Area Teamsters & Emplrs. Pension Fund*, 500 F.3d 334, 342 (3d Cir. 2007). To remedy this evasive practice, ERISA provides that if the primary purpose of a transaction is to evade or avoid pension liability, a pension fund may disregard the transaction, and "liability shall be determined and collected…without regard to such transaction." *Id*. at 340 (quoting ERISA § 4212(c), 29 U.S.C. § 1392).

ERISA withdrawal liability accrues upon an employer's complete withdrawal from a pension fund. Thereafter, the pension fund assesses withdrawal liability under ERISA and issues notification thereof. *New York State Teamsters Conference & Retirement Fund v. Doren Ave. Assocs.,* 321 F. Supp. 2d 435, 440 (N.D.N.Y 2004) (under ERISA, a notice need only "notify the withdrawing employer of the liability, set a payment schedule, and formally demand payment"). It is within the province and discretion of the pension fund to make what is considered to be the factual

determinations relating to withdrawal liability, including whether a transaction was primarily conducted to evade or avoid pension liability and other determinations under 29 U.S.C. §§ 1381-1399 and 1405. *Concrete Pipe & Prods.*, 508 U.S. 602, 610-611 (1993); *see also Kero Leasing Corp.*, 377 F.3d at 306 (Rosenn, J., dissenting).

If a noticed party disputes a pension fund's determination, including, without limitation, a determination that a transaction was primarily conducted to evade or avoid pension liability, the employer, generally, must seek arbitration to resolve this factual dispute. *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1250 (3d Cir. 1987). The burden is on such party to seek arbitration or be bound by the pension fund's determination. In arbitration, there are two presumptions in favor of the pension fund. "First, 'any determination made by a plan sponsor under [29 U.S.C. §§ 1381-1399 and 1405 (1988 ed. and Supp. III)] is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.'" *Concrete Pipe & Prods.*, 508 U.S. at 611 (citing 29 U.S.C. § 1401(a)(3)(A)). The range of these factual determinations includes evade or avoid determinations under 29 U.S.C. § 1392(c). "Second, the sponsor's calculation of a plan's unfunded vested benefits is presumed correct…." *Id.*

Considering the rubric under which withdrawal liability claims are asserted, the Bankruptcy Court found, and this court agrees, that the Pension Fund's disregard of the Spin-Off transaction in making its claim against BI-LO for withdrawal liability as a member of Bruno's controlled group was consistent with the procedures of ERISA and sufficient to constitute a claim for withdrawal liability that encompassed an evade or avoid theory. That is not to say that a claim for withdrawal

liability based on controlled group principles will always implicate evade or avoid issues. However, based on the ERISA statutory scheme for determining who is responsible for withdrawal liability, this court finds the Bankruptcy Court's reading of the Pension Fund Claim to be appropriate in this case.

This conclusion is underscored by the Fourth Circuit's assessment of ERISA arbitration requirements in *Centra*, 947 F.2d 115, which is instructive to the case at hand. Employers have previously attempted to escape ERISA arbitration provisions by arguing that the ERISA dispute resolution procedures for withdrawal liability relate to determinations of who are employers under section 1401 of the MPPAA, but not evade or avoid determinations under section 1392(c). These attempts to separate the determination of who is an employer (which may be related to the determination of who is a member of the controlled group) from evade or avoid determinations have been rejected. *See Centra*, 947 F.2d 115.

In *Centra*, an admitted former member of a controlled group sought to contest withdrawal liability assessed against it by a pension fund. The member's defense was that it had engaged in a stock repurchase transaction pursuant to which it ceased to be an MPPAA employer in time to avoid withdrawal liability. After initially requesting arbitration, the member later sought to enjoin arbitration of the pension fund's original decision to disregard the stock repurchase transaction as an evade or avoid transaction. The member argued that the pension fund's disregard of an evade or avoid transaction was not arbitrable because ERISA dispute resolution provisions applied only to a pension fund's determination of who constitutes an employer under section 1401 of the MPPAA. The Fourth Circuit rejected the member's argument, noting that the determination of the member's

10

employer status "would unavoidably implicate the issue of whether the stock repurchase transaction was designed at least in part to avoid withdrawal liability on the part of Centra." *Id.* at 123. In reaching its decision, the Court underscored the difference between an admitted former member of the controlled group who is arguing that he "*ceased to be"* a member of the controlled group because of a transaction and an entity that argues it was "*never*" a member of the controlled group. *Id.* at 122-23.

Appellants rely upon *Bd. of Trs. of Trucking Emples. of N. Jersey Welfare Fund Inc. - Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 306 (3d Cir. 2004), for the proposition that a cause of action premised on "controlled group" liability does not implicate evade or avoid liability. However, *Kero Leasing Corp.* does not so hold. In that case, a pension fund was trying to enforce a default judgment obtained against one controlled group member against another alleged controlled group member who had never been given notice that the pension fund asserted withdrawal liability against him, was not a named defendant in the civil action for withdrawal liability resulting in the default judgment, and had not been sued individually for recovery of withdrawal liability until nearly seven (7) years later (approximately one (1) year after the passage of the statute of limitations). *Id.* at 297. The limited holding of the Third Circuit in *Kero Leasing Corp.* was that it was not willing to allow a default judgment entered against one controlled group member to be used against another alleged member in order to circumvent the ERISA statute of limitations.[6] Nowhere in its decision does the court ever declare that evade or avoid issues constituted a separate and distinct cause of

---

[6] The statute of limitations for an ERISA withdrawal liability claim was six (6) years, while the state statute of limitations for enforcing a default judgment was twenty (20) years. *Kero Leasing Corp.*, 377 F.3d at 293.

11

action.

As the Bankruptcy Court noted, and this court agrees, one reading of the Pension Fund Claim is that it asserts a claim for any withdrawal liability under ERISA. BI-LO asserted the defense to withdrawal liability that an intervening transaction removed BI-LO from the controlled group. As in *Centra*, this assertion unavoidably implicates the issue of whether the transaction may be disregarded as having the primary purpose to evade or avoid withdrawal liability.

The court further acknowledges the Congressional intent and policy concerns underlying ERISA and the claims asserted thereunder, which have been described as follows:

> The MPPAA was designed "(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) . . . to ensure benefit security to plan participants." H.R. Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2918, 2939. Liberal construction of the MPPAA's notice provisions in favor of pension funds would be consistent with both these goals. Courts have indicated that because ERISA (and the MPPAA) are remedial statutes, they should be liberally construed in favor of protecting the participants in employee benefit plans. (citing *Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir. 1984); *Rettig v. PBGC*, 240 U.S. App. D.C. 118, 744 F.2d 133, 155 (D.C. Cir. 1984)).

*IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986). A restrictive reading of either ERISA or the Pension Fund Claim to avoid adjudication of the claim on the merits would directly conflict with these policy concerns.

For the foregoing reasons, this court finds that the Bankruptcy Court's ruling that the Pension Fund Claim sufficiently implicates evade or avoid liability is correct.

**II. Adequacy of the Pension Fund Claim**

The filing of proofs of claim in bankruptcy cases is governed by Section 501 of the Bankruptcy Code and Rule 3001 of the Bankruptcy Rules. Section 501(a) provides in part that "[a]

creditor or an indenture trustee may file a proof of claim…." 11 U.S.C. § 501(a). Bankruptcy Rule 3001 provides in pertinent part as follows:

> Rule 3001. Proof of Claim
> (a) Form and content. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

Fed. R. Bankr. Proc. 3001(a); see also Fed. R. Bankr. Proc. 9001.

Official Form 10 is the standard bankruptcy proof of claim form and only requires the creditor to include "**basic facts** as to the identity of the claimant, and the amount, nature, and basis of the claim." *In re Today's Destiny, Inc*., 2008 WL 5479109, at *7 (Bankr. S.D. Tex. Nov. 26, 2008) (emphasis added); *see also Gens v. Resolution Trust Corp*., 112 F.3d 569, 575 (1st Cir. 1997) (a proof of claim should conform to the appropriate form and need only provide "adequate notice of the existence, nature and amount of the claim as well as the creditor's intent to hold the estate liable."); *In re Key*, 64 B.R. 786, 789 (Bankr. M.D. Tenn. 1986) ("If a general rule can be drawn from the cases [interpreting Rule 3001(a)], it is that a document(s) constitutes a proof of claim…which states the existence, nature and amount of the claim and contains 'an explicit demand against the estate evidencing an intent to hold the estate liable.'")

The parties agree that the *Today's Destiny* decision correctly describes the limits of the proof of claim requirements as follows:

> [Form 10] and accompanying instruction evidences an intent for a single word or, at most, a single sentence description of the claim. For example, line 2 of the proof of claim asks for the "basis of the claim." Line 2 provides a single line for an answer and refers the claimant to instruction # 2 on the reverse side of the proof of claim for how to answer the question. Instruction # 2 states: State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. Form 10

>does not have the space for a claimant to assert a factual predicate in the detail required by the Federal Rules of Civil Procedure. Nor does Form 10 suggest that a claimant is required to file an attachment in response to Line 2.

*In re Today's Destiny, Inc.*, 2008 WL 5479109, at *7-8; *see also* 9 COLLIER ON BANKRUPTCY ¶ 3001.03 (16th ed. 2010).

The Pension Fund Claim was submitted on Official Form 10, and, at its foundation, is one for withdrawal liability. The dollar amount of the claim, which is determined according to Section 4211(b) of ERISA, is $63,806,631.00, and does not differ based on whether issues of an intervening transaction are raised as a defense. The Pension Fund Claim meets the basic fact requirements for a proof of claim and, in fact, provides considerably more detail regarding the nature and basis of the claim than is required by Form 10 or, as the Bankruptcy Court observed, is typically received by the Bankruptcy Court in bankruptcy cases. The Appendix states that each of the Debtors is jointly and severally liable for "any withdrawal liability." It further states that:

>Through this proof of claim (the "Proof of Claim"), the Pension Fund asserts a claim against BI-LO, LLC, in the full amount of its liability under ERISA and the pension plan documents, including, without limitation, principal, accrued interest, and all other expenses, fees (including attorneys' fees), costs, and charges which the Pension Fund is entitled to recover from BI-LO, LLC, under ERISA, the pension plan documents and applicable law (the "Pension Fund Claim"). (emphasis added).

The Appendix also provides various facts regarding Bruno's and its relationship to BI-LO as a member of the "controlled group."

BI-LO asks this court to disallow or limit the Pension Fund Claim because it specifically cites controlled group principles as a basis for withdrawal liability. However, the proof of claim requirements do not require the Pension Fund to provide any more detail than the basic assertion of withdrawal liability. Here, the Pension Fund opted to include substantially more detail, yet BI-LO

14

urges the court to penalize the Pension Fund for not listing every conceivable basis for withdrawal liability. The approach urged by BI-LO would lead bankruptcy courts to disallow or limit every proof of claim which failed to note an exhaustive list of every basis for the claim. Such an approach clearly belies the very purposes of the MPPAA to protect fund beneficiaries and the purposes of the Bankruptcy Code in protecting creditors.

In summary, the Pension Fund Claim was sufficient to put Appellants on notice of the withdrawal liability claim, including the issues of evade or avoid which arose from BI-LO's denial of liability, and contained sufficient information for an interested party to evaluate the basis of the claim in accordance with the limited requirements applicable to bankruptcy proofs of claims. Because the Pension Fund Claim was adequate to include the evade or avoid issues raised by the parties after the initial filing of the claim, the Pension Fund Claim is not time barred.

### III. The Bankruptcy Court's Consideration of Equity

While equitable considerations need not be considered to affirm the Bankruptcy Court's decision, the events and equities relating to the Pension Fund Claim support this court's reading of the scope of the Pension Fund Claim. As stated by the Bankruptcy Court:

> Equity likewise dictates this result as there appears to be no meaningful argument by BI-LO or Lone Star Fund V that they were unaware or surprised by the nature and basis of the Pension Fund Claim. Withdrawal liability was asserted, BI-LO responded thereafter that it was no longer a member of Bruno's "controlled group" after the Spin-Off, and the Pension Fund responded to this defense that the Spin-Off was disregarded under applicable law. All of this was in the record by September 30, 2009, and no party prior to confirmation of the Plan ever asserted that it did not understand that the withdrawal liability claim under ERISA encompassed all provisions of ERISA, including evade or avoid issues. Furthermore, no creditor of the bankruptcy estate is prejudiced by the court's reading of the Pension Fund Claim because the estate is not liable for payment of the Pension Fund Claim or obligated to challenge it. The Plan provides that the Investor, a Lone Star entity, or Lone Star

> Fund V or Lone Star Bermuda, as guarantors, are responsible for payment of the Pension Fund Claim to the extent that the claim is allowed. Under these circumstances, the court's conclusion that the Pension Fund Claim encompassed evade or avoid liability will not prejudice the Debtors, their estates or the other creditors in any way.

(Order, ¶ Z).

Bankruptcy courts are courts of equity, and, contrary to Appellants' argument, equity has a place in the bankruptcy claims process. *See, e.g., Dabney v. Addison*, 65 B.R. 348, 350 (E.D. Va. 1985) (equitable considerations are a factor in considering amendments to proofs of claim) (citing *Wheeling Valley Coal Co. v. Mead*, 171 F.2d 916, 920-21 (4th Cir. 1949)); *see also In re Uwimana*, 284 B.R. at 222 (equitable considerations are a factor in considering informal proofs of claims). Although equity may not be relied upon to excuse a creditor from filing a proof of claim altogether, *Maressa v. A.H. Robins Co., Inc.*, 839 F.2d 220 (4th Cir. 1988), equitable considerations are appropriate when a bankruptcy court is passing upon the scope or validity of a timely filed claim. *See, e.g., In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991) ("[W]e must consider more broadly the role of bar dates and claims adjudication in bankruptcy cases. Although bankruptcy law has elements of gamesmanship and the consequences for missing various deadlines are severe, the bankruptcy law is not supposed to function merely as a procedural gauntlet…."). Here, there is no dispute that the Pension Fund Claim was timely filed; the only real question raised by the Appellants is one of scope and interpretation. Accordingly, it was within the province of the Bankruptcy Court to consider the events and equities relating to the Pension Fund Claim, the scope of the claim, and Appellants' understanding of the claim as garnered from the record. These equities and events support an interpretation of the Pension Fund Claim that favors inclusion of all issues relating to

withdrawal liability under ERISA, including evade or avoid issues, not exclusion. Such an interpretation is also consistent with the Fourth Circuit's strong preference for resolution of claims on the merits. *See Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010).

## CONCLUSION.

For the foregoing reasons, this court **AFFIRMS** the Order of the BI-LO Bankruptcy Court.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Court Judge

September 30, 2011
Greenville, South Carolina